**UNITED STATES DISTRICT COURT**
**IN THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DONALD J. MOLOSKY and ELIZABETH
A. MOLOSKY, on behalf of themselves and
all others similarly situated,

        Case No. 07-11247

        Plaintiffs,

        Honorable Bernard A. Friedman

vs.

        Magistrate Judge Steven D. Pepe

WASHINGTON MUTUAL BANK,

        Defendant.

---

| | |
|---|---|
| Paul A. Zebrowski (P44427) | Theodore Seitz (P60320) |
| Thomas A. Biscup (P40380) | Lori McAllister (P39501) |
| Attorneys for Plaintiffs | T.L. Summerville (P63445) |
| Law Offices of Paul Zebrowski & Associates | Attorneys for Defendants |
| 45581 Village Boulevard | DYKEMA GOSSETT PLLC |
| Shelby Twp., MI  48315 | Capitol View |
| (586) 566-7266 | 201 Townsend Street, Suite 900 |
| | Lansing, MI 48933 |
| | (517) 374-9149 |
| | tseitz@dykema.com |

Stephen M. Rummage
Jonathan M. Lloyd
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
(206) 622-3150

---

## <u>MOTION TO DISMISS</u>

Washington Mutual Bank ("WMB"), through its attorneys, Dykema Gossett PLLC and

Davis Wright Tremaine LLP, moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) Counts I, II,

III, IV and V of Plaintiffs' First Amended Class Action Complaint ("Complaint") in their entirety.

In support of this Motion, WMB relies on the reasons stated in the attached Brief in Support of Motion to Dismiss, filed contemporaneously herewith.

Pursuant to E.D. Mich. L.R. 7.1, counsel for WMB contacted counsel for Plaintiffs and explained the nature of this motion and its legal basis, but did not obtain concurrence in the relief sought.

WHEREFORE, WMB requests that the Court grant its Motion to Dismiss.

DYKEMA GOSSETT PLLC


By: s/Theodore Seitz
    Theodore Seitz (P60320)
    Lori McAllister (P39501)
    T.L. Summerville (P63445)
    Attorneys for Defendants
    Capitol View
    201 Townsend Street, Suite 900
    Lansing, MI 48933
    (517) 374-9149
    tseitz@dykema.com

Dated: July 10, 2007

**UNITED STATES DISTRICT COURT**
**IN THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DONALD J. MOLOSKY and ELIZABETH
A. MOLOSKY, on behalf of themselves and
all others similarly situated,

              Plaintiffs,

vs.

WASHINGTON MUTUAL BANK,

              Defendant.

Case No. 07-11247

Honorable Bernard A. Friedman

Magistrate Judge Steven D. Pepe

---

Paul A. Zebrowski (P44427)
Thomas A. Biscup (P40380)
Attorneys for Plaintiffs
Law Offices of Paul Zebrowski & Associates
45581 Village Boulevard
Shelby Twp., MI  48315
(586) 566-7266

Theodore Seitz (P60320)
Lori McAllister (P39501)
T.L. Summerville (P63445)
Attorneys for Defendants
DYKEMA GOSSETT PLLC
Capitol View
201 Townsend Street, Suite 900
Lansing, MI 48933
(517) 374-9149
tseitz@dykema.com

Stephen M. Rummage
Jonathan M. Lloyd
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
(206) 622-3150

---

**BRIEF IN SUPPORT OF MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. iv

CONCISE STATEMENT OF ISSUES PRESENTED................................................................ vii

CONTROLLING OR MOST APPROPRIATE AUTHORITY .................................................. viii

INTRODUCTION ...............................................................................................................1

BACKGROUND ................................................................................................................2

ARGUMENT......................................................................................................................3

    A.  Federal Law Preempts Plaintiffs' State Statutory Claims with Respect to WMB's Collection of Payoff Statement and Recording Fees. ....................................................3

        1.  Congress Granted the OTS Exclusive Authority to Regulate the Lending Operations of Federal Savings Associations. ....................................4

        2.  The OTS Has Completely Occupied the Field of Lending Regulations Applicable to Federal Savings Associations. ......................................................5

        3.  OTS Regulations Expressly Preempt Plaintiffs' Claims. ...............................6

            a.  Federal Law Preempts Plaintiffs' Claims under the Michigan Usury Act. ........................................................................................7

            b.  Federal Law Preempts Plaintiffs' Claims under the Recording Statute............................................................................................8

            c.  Federal Law Preempts Plaintiffs' Claims under the Michigan Consumer Protection Act. ..............................................................9

    B.  Even If They Were Not Preempted, Plaintiffs' State Statutory Claims Still Would Fail as a Matter of Law. ..................................................................................................10

        1.  The Michigan Usury Act Does Not Provide a Cause of Action for Damages. ............................................................................................10

        2.  The Recording Act Does Not Prohibit Pass-Through of Mortgage Discharge Recording Fees. ..............................................................................11

        3.  Plaintiffs' Transactions with WMB Fall outside the Scope of the MCPA ......................................................................................................13

    C.  The Complaint Itself Negates Plaintiffs' Breach of Contract Claim. .........................15

        1.  The Contracts Do Not Forbid the Payoff Statement Fee.............................15

2.    Plaintiffs' Contract Allows the Recording Fee..................................................16

D.  Because Plaintiffs Do Not Allege Anything More Than a Mere Overcharge, They Have Not Stated a Claim under RESPA. ....................................................................17

E.  The Voluntary Payment Doctrine Bars Plaintiffs' Claims. ..........................................19

CONCLUSION AND RELIEF REQUESTED ...............................................................................20

CERTIFICATE OF SERVICE .......................................................................................................21

## TABLE OF AUTHORITIES

**Cases**

*Attorney General v. Diamond Mortgage Co.*, 414 Mich. 603 N.W.2d 805 (1982)...................... 14

*Atwood v. Bearss*, 47 Mich. 72, 10 N.W. 112, 112 (1881)............................................................ 12

*Boulware v. Crossland Mortgage Corp.*, 291 F.3d 261 (4th Cir. 2002)................................. 18, 19

*Boursiquot v. Citibank F.S.B.*, 323 F. Supp. 2d 350 (D. Conn. 2004)................................................ 9

*Cappellini v. Mellon Mortgage Co.*, 991 F. Supp. 31 (D. Mass. 1998)......................................... 15

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984) ...................... 17, 19

*Colangelo v. Norwest Mortgage, Inc.*, 598 N.W.2d 14 (Minn. Ct. App. 1999) ........................... 15

*Curran v. Washington Mut. Bank, FA*, 2006 WL 516846 (W.D. Ark. Mar. 2, 2006)................. 15

*Duncan v. Eastern Sav. Bank*, No. 03-50-CK (Ingham Cir. Ct. Oct. 31, 2003). ........................... 8

*Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141 (1982) ......................................... 4

*G.M. Eng'rs & Assocs., Inc. v. West Bloomfield Twp.*, 922 F.2d 328 (6th Cir. 1990) .................. 3

*Glendale Fed. Sav. & Loan Ass'n v. Fox*, 459 F. Supp. 903 (C.D. Cal. 1978) ............................. 5

*Haehl v. Washington Mut. Bank, F.A.*, 277 F. Supp. 2d 933 (S.D. Ind. 2003)...................... 4, 8, 9

*Hanning v. Homecomings Fin. Networks*, 436 F. Supp. 2d 865 (W.D. Mich. 2006)................... 14

*Haug v. Bank of Am., N.A.*, 317 F.3d 832 (8th Cir. 2003) ............................................................ 18

*Konynenbelt v. Flagstar Bank, FSB*, 242 Mich. App. 21, 617 N.W.2d 706 (2000) ................... 7, 8

*Krause v. GE Capital Mortgage Serv., Inc.*, 731 N.E.2d 302 (Ill. App. Ct. 2000)...................... 15

*Kruse v. Wells Fargo Home Mortgage, Inc.*, 383 F.3d 49 (2d. Cir. 2004)............................. 18, 19

*Krzalic v. Republic Title Co.*, 314 F.3d 875 (7th Cir. 2002)...................................................... 18, 19

*Leonard v. Northwest Airlines, Inc.*, 605 N.W.2d 425 (Minn. Ct. App. 2000) ............................. 4

*Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389 (6th Cir. 1998)........................................................ 3

*Liss v. Lewiston-Richards, Inc.*, 478 Mich. 203, 732 N.W.2d 514 (June 6, 2007)...................... 14

*Lopez v. World Sav. & Loan Ass'n,* 130 Cal. Rptr. 2d 42 (Cal. Ct. App. 2003)....................... 4, 6

*Mercado v. Calumet Fed. Sav. & Loan Ass'n*, 763 F.2d 269 (7th Cir. 1985) ............................. 18

*Michigan Mobile Homeowners Ass'n v. Bank of Commonwealth*,
   56 Mich. App. 206, 223 N.W.2d 725, 730 (1974)..................................................................... 10

*Mills v. Equicredit Corp.*, 294 F. Supp. 2d 903 (E.D. Mich. 2003) ............................................. 14

*Mills v. Equicredit Corp.*, 344 F. Supp. 2d 1071 (E.D. Mich. 2004) ........................................... 20

*Morgan v. Church's Fried Chicken*, 829 F.2d 10 (6th Cir. 1987)................................................. 3

*Moskowitz v. Washington Mut. Bank, FA*, 768 N.E.2d 262 (Ill. App. Ct. 2002)....................... 3, 4

*Newton v. Bank West*, 262 Mich. App. 434, 686 N.W.2d 491 (2004)......................................... 14

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY· CAPITOL VIEW 201 TOWNSEND STREET SUITE 900·LANSING, MICHIGAN 48933

*Progressive Michigan Ins. Co. v. United Wisconsin Life Ins. Co.*,
  84 F. Supp. 2d 848 (E.D. Mich. 2000)...................................................................... 20

*Quinn v. Advanta Nat. Bank*, No. 2002-3822-CP (Berrien Cty. Trial Ct., Feb. 9, 2004) ............. 13

*Santiago v. GMAC Mortgage Group, Inc.*, 417 F.3d 384 (3d Cir. 2005)......................... 17, 18, 19

*Smith v. Globe Life Ins. Co.*, 460 Mich. 446, 597 N.W.2d 28, 38 (1999) ................................... 14

*Sogevalor v. Penn Cent. Corp.*, 771 F. Supp. 890 (S.D. Ohio 1991) ............................................. 3

*Stone v. Mellon Mortgage Co.*, 771 So.2d 451 (Ala. 2000) ................................................... 15, 20

*Van Der Molen v. Washington Mut. Fin., Inc.*, 835 N.E.2d 61 (Ill. App. Ct. 2005) ................. 4, 7

*Washington Mut. Bank, FA v. Superior Court*, 115 Cal. Rptr. 2d 765 (Cal. Ct. App. 2002) ......... 3

*Westfall v. Chase Lincoln First Bank, N.A.,* 685 N.Y.S.2d 181 (App. Div. 1999)....................... 20

**Statutes**

12 C.F.R. § 560.2(a)...................................................................................................................... 5, 8

12 C.F.R. § 560.2(b) ...................................................................................................................... 6, 7

12 C.F.R. § 560.2(b)(5).................................................................................................................. 7, 8

12 C.F.R. § 560.2(b)(10)................................................................................................................ 7, 8

12 C.F.R. § 560.2(c)........................................................................................................................... 9

12 U.S.C. § 1464(a) ........................................................................................................................... 4

12 U.S.C. § 1464(c)(1)(B) ............................................................................................................... 14

12 U.S.C. § 2601............................................................................................................................... vii

12 U.S.C. § 2607(b) ................................................................................................................... 17, 18

12 U.S.C. § 2614............................................................................................................................... 19

28 U.S.C. § 1332(d)(2) .................................................................................................................... 19

28 U.S.C. §1332................................................................................................................................ 19

M.C.L. § 438.31 ...................................................................................................................... vii, 7, 10

M.C.L. § 438.31c(10) ...................................................................................................................... 10

M.C.L. § 445.1673 ........................................................................................................................... 13

M.C.L. § 445.901 .............................................................................................................................. vii

M.C.L. § 445.904(1)(a)..................................................................................................................... 14

M.C.L. § 565.41 ......................................................................................................................... passim

M.C.L. § 565.44 ......................................................................................................................... 12, 13

M.C.L. § 600.2567 ........................................................................................................................... 11

M.C.L. § 600.2567(1)(a)................................................................................................................... 13

M.C.L. § 600.2567a(1) & (2)............................................................................................................ 13

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY· CAPITOL VIEW 201 TOWNSEND STREET SUITE 900·LANSING, MICHIGAN 48933

**Agency Interpretations**

61 Fed. Reg. 50951 (Sept. 30, 1996) .................................................................................5-10

OTS Letter P-2006-2 (Mar. 7, 2006) (attached) ............................................................... 6

OTS Letter P-99-3 (Mar. 10, 1999) (attached) ............................................................ 6, 9

**Rules**

Fed. R. Civ.  P. 12(b)(6)................................................................................................. 1, 20

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY· CAPITOL VIEW 201 TOWNSEND STREET SUITE 900·LANSING, MICHIGAN 48933

## CONCISE STATEMENT OF ISSUES PRESENTED

Whether Defendant Washington Mutual Bank is entitled to dismissal of Plaintiffs' Complaint in its entirety, including claims for breach of contract, and for violation of the Michigan Usury Act, M.C.L. § 438.31 *et seq.*, the Michigan recording act, M.C.L. § 565.41, the federal Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.*, and the Michigan Consumer Protection Act, M.C.L. § 445.901 *et seq.*

## **CONTROLLING OR MOST APPROPRIATE AUTHORITY**

### **Statutes**

12 U.S.C. § 1464(a)

28 U.S.C. § 1332

12 C.F.R. § 560.2

M.C.L. § 438.31(c)(10)

M.C.L. § 445.904(1)(a)

M.C.L. § 565.44

### **Court Rules**

Fed. R. Civ. P. 12(b)(6)

### **Agency Interpretations**

61 Fed. Reg. 50951

### **Case Law**

*Boulware v. Crossland Mortgage Corp.*, 291 F.3d 261 (4th Cir. 2002)

*Cappellini v. Mellon Mortgage Co.*, 991 F. Supp. 31 (D. Mass. 1998)

*Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141 (1982)

*Haug v. Bank of Am., N.A.*, 317 F.3d 832 (8th Cir. 2003)

*Michigan Mobile Homeowners Ass'n v. Bank of Commonwealth*, 56 Mich. App. 206, 223 N.W.2d 725 (1974)

*Mills v. Equicredit Corp.*, 344 F. Supp. 2d 1071 (E.D. Mich. 2004)

*Santiago v. GMAC Mortgage Group, Inc.*, 417 F.3d 384 (3d Cir. 2005)

*Smith v. Globe Life Ins. Co.*, 460 Mich. 446, 597 N.W.2d 28 (1999)

*Stone v. Mellon Mortgage Co.*, 771 So.2d 451 (Ala. 2000)

viii

**INTRODUCTION**

In this putative class action, Plaintiffs claim that Washington Mutual Bank ("WMB") improperly charged them two small fees when they paid off their home loan.  Specifically, they allege that WMB charged a payoff statement fee and obtained reimbursement for a mortgage discharge recording fee, supposedly in violation of their note and mortgage and several federal and Michigan statutes.  These sorts of claims are nothing new; other borrowers have sued financial institutions across the country on similar theories, with notable lack of success.  Pursuant to Federal Rule of Civil Procedure 12(b)(6), WMB now asks that the Court dismiss Plaintiffs' claims, for the following reasons:

*First*, federal law preempts Michigan law to the extent it purports to regulate the lending activities of federal savings associations, which are subject to exclusive federal regulation.  Courts have dismissed similar claims on that basis.  Accordingly, under settled federal law, this Court should dismiss the Michigan statutory claims based on preemption principles, as those claims amount to nothing more than an effort to use Michigan law to regulate the loan-related fees that a federal savings association may charge.

*Second*, even if the Court reached the merits of the three state statutory claims, it should dismiss those claims.  In particular, (a) the Michigan Usury Act does not provide a cause of action for money damages, but limits the available remedies to injunctive relief; (b) the Michigan recording statute requires mortgagees to pay recording fees in the first instance to facilitate prompt recording, but does *not* prohibit mortgagees from recovering those fees from mortgagors (especially when authorized by contract, as in this case); and (c) under settled authority, the Michigan Consumer Protection Act ("MCPA") does not apply to federal savings associations' residential loan transactions, an activity specifically authorized by federal law and thus outside the scope of the MCPA.

1

***Third***, Plaintiffs' contract permitted WMB to recover the recording fee it paid, and it did not prohibit the Bank from charging a payoff statement fee – as other courts have held on similar allegations. Plaintiffs have not stated a breach of contract claim.

***Fourth,*** Plaintiffs' claim under the federal Real Estate Settlement Procedures Act ("RESPA") misunderstands the statute. Plaintiffs claim a right to relief under RESPA on the theory that WMB overcharged them when it collected statement and recording fees. The many federal courts that have considered the issue, however, unanimously have concluded that RESPA does not provide a cause of action for an alleged overcharge.

***Fifth***, because Plaintiffs knowingly and voluntarily paid both fees, without protest, the voluntary payment doctrine precludes them from seeking to recoup those funds.

## BACKGROUND

According to the First Amended Class Action Complaint ("Complaint"), Plaintiffs had a loan ("Note") secured by a mortgage, which WMB serviced. Complaint, ¶ 5. In September 2006, Plaintiffs requested a payoff statement from WMB. Complaint, ¶¶ 6-7. WMB provided Plaintiffs with the statement, which itemized a $30.00 fee for preparation of the payoff statement and a $14.00 mortgage discharge recording fee. Complaint, ¶¶ 7-9 & Ex. C. Plaintiffs' mortgage specifically permitted WMB to pass the mortgage discharge recording fee on to Plaintiffs, Complaint, Ex. B, ¶ 23, but did not refer to (much less prohibit) the payoff statement fee. The payoff statement, however, noted on its face that the person requesting the payoff statement would be responsible for the fee – without regard to whether the borrower asked for the statement. Complaint, Ex. C, at 1.

After receiving the payoff statement, Plaintiffs elected to pay off the amount due on the Note, as well as the payoff statement fee and the mortgage discharge recording fee. Complaint,

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY· CAPITOL VIEW 201 TOWNSEND STREET SUITE 900·LANSING, MICHIGAN 48933

2

¶ 10.  On or about September 19, 2006, WMB recorded the discharge of Plaintiffs' mortgage with the Emmet county recorder of deeds.  Complaint, Ex. D.

### ARGUMENT

In deciding a motion to dismiss, the Court "must accept all of plaintiff's factual allegations as true and determine whether any set of facts consistent with the allegations would entitle the plaintiff to relief."  *G.M. Eng'rs & Assocs., Inc. v. West Bloomfield Twp.*, 922 F.2d 328, 330 (6th Cir. 1990).  "The trial court need not accept as true legal conclusions or unwarranted factual inferences."  *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).  Further, a complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* at 406 (citing *Sogevalor v. Penn Cent. Corp.*, 771 F. Supp. 890, 893 (S.D. Ohio 1991)).

**A.** **Federal Law Preempts Plaintiffs' State Statutory Claims with Respect to WMB's Collection of Payoff Statement and Recording Fees.**

WMB is a federally chartered savings association.  *See* Declaration of Elizabeth Proctor ("Proctor Decl."), ¶ 2; *see also, Washington Mut. Bank, FA v. Superior Court*, 115 Cal. Rptr. 2d 765, 770 (Cal. Ct. App. 2002) (recognizing WMB as a federal savings association); *Moskowitz v. Washington Mut. Bank, FA*, 768 N.E.2d 262, 264 (Ill. App. Ct. 2002) (same).[1]  Federal law therefore regulates all facets of WMB's lending operations, foreclosing any claims under state law:  (1) Congress authorized the Office of Thrift Supervision ("OTS") to issue sweeping, preemptive regulations; (2) the OTS has done so; and (3) those regulations bar Plaintiffs' claims. Where, as here, "federal preemption bars relief under any set of facts consistent with the

---

[1] WMB requests that the Court take judicial notice of its status as a federally-chartered savings association.

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY· CAPITOL VIEW 201 TOWNSEND STREET SUITE 900 LANSING, MICHIGAN 48933

pleadings, the complaint fails to state a claim and must be dismissed." *Leonard v. Northwest Airlines, Inc.*, 605 N.W.2d 425, 428 (Minn. Ct. App. 2000).

Courts across the country have held that federal law preempts state statutory and other claims with respect to fees incurred in connection with loan payoffs. *See, e.g., Moskowitz*, 768 N.E.2d at 265-66 (payoff statement fees); *Lopez v. World Sav. & Loan Ass'n,* 130 Cal. Rptr. 2d 42, 54-55 (Cal. Ct. App. 2003) ("payoff demand fees"); *Haehl v. Washington Mut. Bank, F.A.*, 277 F. Supp. 2d 933, 941-42 (S.D. Ind. 2003) ("reconveyance fees"); *Van Der Molen v. Washington Mut. Fin., Inc.*, 835 N.E.2d 61, 66-67 (Ill. App. Ct. 2005) (prepayment fee).  For the reasons explained in these cases, basic preemption principles compel dismissal here.

### 1. Congress Granted the OTS Exclusive Authority to Regulate the Lending Operations of Federal Savings Associations.

In passing the Home Owners' Loan Act ("HOLA"), Congress empowered the OTS to issue regulations "to provide for the organization, incorporation, examination, operation, and regulation of associations to be known as Federal savings associations…giving primary consideration of the best practices of thrift institutions in the United States."  12 U.S.C. § 1464(a).  As the United States Supreme Court has explained, Congress made this federal power exclusive:

> Congress plainly envisioned that federal savings and loans would be governed by what the [OTS] – not any particular State – deemed to be the "best practices." ...  Thus, the statutory language suggests that Congress expressly contemplated, and approved, the [OTS]'s promulgation of regulations superseding state law.

*Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 161-62 (1982).  Congress also made the OTS's power expansive:  "The broad language of [HOLA] expresses ***no limits*** on the [OTS]'s authority to regulate the lending practices of federal savings and loans.  As one court put it, '[i]t would have been difficult for Congress to give the [OTS] a broader mandate.'"  *Id.* at 161

DYKEMA GOSSETT· A PROFESSIONAL LIMITED LIABILITY COMPANY· CAPITOL VIEW 201 TOWNSEND STREET SUITE 900 LANSING, MICHIGAN 48933

(emphasis added) (quoting *Glendale Fed. Sav. & Loan Ass'n v. Fox*, 459 F. Supp. 903, 910 (C.D. Cal. 1978)).

### 2. The OTS Has Completely Occupied the Field of Lending Regulations Applicable to Federal Savings Associations.

Consistent with the broad congressional mandate the Supreme Court recognized in *de la Cuesta*, the OTS has occupied the entire field of lending regulations applicable to federal savings associations, including WMB.  In 1996, the OTS promulgated new regulations emphasizing the broad scope of its preemptive power:

> *Occupation of field.*  Pursuant to sections 4(a) and 5(a) of the HOLA, 12 U.S.C. 1463(a), 1464(a), OTS **is authorized to promulgate regulations that preempt state laws affecting the operations of federal savings associations** when deemed appropriate to facilitate the safe and sound operation of federal savings associations, to enable federal savings associations to conduct their operations in accordance with the best practices of thrift institutions in the United States, or to further other purposes of the HOLA. To enhance safety and soundness and to enable federal savings associations to conduct their operations in accordance with best practices (by efficiently delivering low-cost credit to the public free from undue regulatory duplication and burden), **OTS hereby occupies the entire field of lending regulation for federal savings associations.**  OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with **a uniform federal scheme of regulation**.  **Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities**, except to the extent provided in paragraph (c) of this section or § 560.110 of this part.  For purposes of this section, "state law" includes any state statute, regulation, ruling, order or judicial decision.

12 C.F.R. § 560.2(a) (emphasis added).  The OTS explained its preemptive purpose as follows: "instead of being subject to a hodgepodge of conflicting and overlapping state lending requirements, federal thrifts are free to originate loans under a single set of uniform federal laws and regulations."  61 Fed. Reg. 50951, 50965 (Sept. 30, 1996) (OTS comments on § 560.2).

Accordingly, when a plaintiff challenges a federal savings association's lending practices under state law, federal law preempts the claim.  "[T]he federal regulation is intended to preempt

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY· CAPITOL VIEW 201 TOWNSEND STREET SUITE 900·LANSING, MICHIGAN 48933

5

*all* state laws purporting to regulate *any aspect* of the lending operations of a federally chartered savings association, whether or not OTS has adopted a regulation governing the precise subject of the state provision." *Lopez*, 130 Cal. Rptr. 2d at 49 (emphasis added).  The federal regulatory scheme is "exclusive, leaving *no room* for state regulation, conflicting or complementary."  OTS Letter P-2006-2, at 3 (Mar. 7, 2006) (emphasis added).

Notwithstanding the preemption of state law, borrowers have ample federal protection and remedies for wrongdoing.  As the OTS has recognized, the interests of borrowers are protected not only by "the elaborate network of federal borrower-protection statutes applicable to federal thrifts, including the Truth in Lending Act, the Real Estate Settlement Procedures Act, [and] the Equal Credit Opportunity Act," among others, but also by separate OTS regulations forbidding unfair practices.  *See* 61 Fed. Reg. at 50965-66.  *See also* OTS Letter P-99-3, at 18 (Mar. 10, 1999).  Indeed, Plaintiffs implicitly recognize the primacy of federal law in bringing a claim under the RESPA.

### 3.    OTS Regulations Expressly Preempt Plaintiffs' Claims.

In its preemption regulation, the OTS provided analytical guideposts for determining the scope of preemption, chief among them being a list of non-exclusive "[i]llustrative examples" of "the types of state laws preempted."  12 C.F.R. § 560.2(b).  If a state law "is listed in [this list of exemplar preempted laws in] paragraph (b)," the OTS has made clear that "the analysis will end there; *the law is preempted*."  61 Fed. Reg. at 50966 (emphasis added).  Most important for this case, the examples of expressly preempted state laws include *any* that purport to impose requirements regarding "[l]oan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees," as well as the "[p]rocessing,

6

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY· CAPITOL VIEW 201 TOWNSEND STREET SUITE 900 LANSING, MICHIGAN 48933

origination, servicing, sale or purchase of, or investment or participation in, mortgages." 12

C.F.R. § 560.2(b)(5) & (10).

On its face, 12 C.F.R. § 560.2(b) preempts Plaintiffs' statutory claims, all of which seek

to use Michigan law to regulate WMB's decision to charge alleged prepayment fees and

servicing-related fees associated with Plaintiffs' loan.

**a.      Federal Law Preempts Plaintiffs' Claims under the Michigan Usury Act.**

In Count II, Plaintiffs allege that both the payoff statement fee and the mortgage

discharge recording fee amount to "prepayment penalties" prohibited by the Michigan Usury

Act, M.C.L. § 438.31 *et seq.*  Complaint ¶ 36.  But 12 C.F.R. § 560.2(b)(5) expressly preempts

any state law that purports to regulate "prepayment penalties."  Thus, even assuming that

Plaintiffs have characterized the fees accurately, the regulation makes clear that the OTS has

preempted these claims.  *See, e.g., Van Der Molen*, 835 N.E.2d at 66-67 (OTS regulation

preempts claim challenging prepayment fee).

In arguing to the contrary, Plaintiffs undoubtedly will rely on *Konynenbelt v. Flagstar*

*Bank, FSB*, 242 Mich. App. 21, 617 N.W.2d 706 (2000), in which the Michigan Court of

Appeals held that HOLA did not preempt the Usury Act.  Because preemption presents an issue

of federal law, however, this Court need not give weight to *Konynenbelt.*  In any event, that

decision relies on an erroneous preemption analysis.  As an initial matter, the *Konynenbelt*

court's conclusion that 12 C.F.R. § 560.2(b) did not preempt the Usury Act amounts to dicta, as

the 1996 OTS regulation took effect only *after* the plaintiffs filed their lawsuit.  242 Mich. App.

at 33, 617 N.W.2d at 713.  More fundamentally, the OTS has directed that if a state law appears

in the examples of preempted laws set forth in 12 C.F.R. § 560.2(b) – and laws purporting to

regulate "prepayment penalties" *do* in fact appear in that list – "the analysis will end there; the

7

law is preempted." 61 Fed. Reg. at 50966. The *Konynenbelt* court simply ignored subsection (b) and instead attempted to parse Congress's and the OTS's intent by looking at a different subsection of 12 C.F.R. § 560.2. *Konynenbelt*, 242 Mich. App. at 33-34, 617 N.W.2d at 713. In so doing, the court improperly allowed the limited exception in subsection (c) – which the OTS directed be construed "narrowly" – to eviscerate the regulation's central preemptive provisions.

The Supreme Court has rejected this approach to HOLA preemption, instead requiring courts to focus on "whether the [OTS] meant to pre-empt [the statute], and, if so, whether that action is within the scope of the [OTS's] delegated authority." *de la Cuesta*, 458 U.S. at 154. Clearly, the OTS intended to preempt laws such as the Usury Act, which purport to regulate prepayment fees, 12 C.F.R. § 560.2(b)(5), and the OTS had authority to preempt state law in that respect. At least one Michigan court has rejected *Konynenbelt* on exactly these grounds, holding that federal law preempts Usury Act claims for prepayment charges. *See Duncan v. Eastern Sav. Bank*, No. 03-50-CK (Ingham Cir. Ct. Oct. 31, 2003). This Court should do the same.

### b.   Federal Law Preempts Plaintiffs' Claims under the Recording Statute.

In Count III, Plaintiffs claim that WMB violated the Michigan recording statute, M.C.L. § 565.41, because Plaintiffs reimbursed WMB for the fee it paid to record the discharge of their mortgage. But Plaintiffs' claim clearly relates to the "servicing…of…mortgages" and is thus preempted on the face of the regulation. 12 C.F.R. § 560.2(b)(10); *see also, Haehl*, 277 F. Supp. 2d at 941-42. As the OTS properly issued this regulation pursuant to its occupation of the "entire field of lending regulation for federal savings associations," 12 C.F.R. § 560.2(a), federal law preempts the Michigan recording statute, at least to the extent that Plaintiffs would use it to regulate WMB's loan servicing activities.

8

### c.       Federal Law Preempts Plaintiffs' Claims under the Michigan Consumer Protection Act.

Federal law likewise preempts Count V of Plaintiffs' Complaint, which alleges a violation of the MCPA.  To be sure, federal law does not preempt all state laws that might apply to federally chartered savings associations.  State laws of general application can survive preemption analysis – but only "to the extent that they *only incidentally affect the lending operations* of Federal savings associations."  12 C.F.R. § 560.2(c) (emphasis added).  To ensure that creative plaintiffs do not use generally applicable state law to accomplish indirectly regulation that a state could not undertake directly, the OTS has cautioned that Section 560.2(c)'s exception to preemption "is intended to be interpreted narrowly" and that "[a]ny doubt should be resolved in favor of preemption."  61 Fed. Reg. at 50966-67.

Plaintiffs here hope to apply a generic state law, the MCPA, to regulate the fees that WMB allegedly charged in connection with its mortgage lending activities.  On its face, however, application of state law in this fashion seeks to affect the lending operations of a federal association more than "incidentally" and is therefore preempted, as both the OTS and various courts have held.  *See, e.g.*, OTS Letter P-99-3, at 13-14 (California Unfair Competition Act); *Boursiquot v. Citibank F.S.B.*, 323 F. Supp. 2d 350, 356 (D. Conn. 2004) (Connecticut Unfair Trade Practices Act); *Haehl*, 277 F. Supp. 2d at 942-43 (state tort claim).

As in *Haehl*, *Boursiquot* and the 1999 OTS letter, if Michigan were to apply the MCPA to control the fees that WMB charges in connection with its mortgages, the MCPA would have "a direct bearing" on (and thus affect more than "incidentally") WMB's mortgage lending operations.  *Boursiquot*, 323 F. Supp. at 356.  Federal law preempts this effort.  Rather than subjecting WMB "to a hodgepodge of conflicting and overlapping state lending requirements,"

9

the Court should honor the OTS's declaration that "a single set of uniform federal laws and regulations" governs WMB's conduct.  61 Fed. Reg. at 50965.

### B.      Even If They Were Not Preempted, Plaintiffs' State Statutory Claims Still Would Fail as a Matter of Law.

WMB believes the Court can resolve Plaintiffs' state statutory claims on federal preemption grounds without reaching their merits.  But even were the Court to conclude that the statutory claims survive preemption, those claims would fail as a matter of law.

### 1.      The Michigan Usury Act Does Not Provide a Cause of Action for Damages.

In Count II, Plaintiffs' Complaint alleges that both the payoff statement fee and the mortgage discharge recording fee violate the Usury Act, M.C.L. § 438.31 *et seq.*, because they amount to prepayment fees.  Complaint, ¶¶ 34-38.  As a result, Plaintiffs seek "[j]udgment in the amount to which Plaintiffs…are found by the trier of fact to be entitled."  Complaint, ¶ 38.  The Usury Act, however, does not provide a cause of action for monetary damages.

M.C.L. § 438.31c(10) states that "[a] party to a transaction subject to this act shall be entitled to have his or her rights under this act enforced or protected *by injunctive order of a court*." (Emphasis added.)  Michigan courts have interpreted this provision as providing the exclusive remedy for violations of the Usury Act, with no right to recover damages:

> under … M.C.L.A. s 438.31 et seq. … (1) *there is no right to repayment of usurious interest which has been paid by means of an independent action brought by the borrower*, usury being in the nature of a defense, and as such the penal provisions are invoked by the lender or his assigns bringing an action to enforce the note or contract…and (3) the injunctive relief provided by the statute does not create any right other than the right to an injunctive order restraining the lender or his assigns from taking enforcement measures against the borrower.

*Michigan Mobile Homeowners Ass'n v. Bank of Commonwealth*, 56 Mich. App. 206, 216-17, 223 N.W.2d 725, 730 (1974) (emphasis added).

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY· CAPITOL VIEW 201 TOWNSEND STREET SUITE 900·LANSING, MICHIGAN 48933

10

Because the Legislature chose to limit the Usury Act's remedies to injunctive relief, the Court should dismiss Plaintiffs' claim seeking money damages under the Act.

### 2.     The Recording Act Does Not Prohibit Pass-Through of Mortgage Discharge Recording Fees.

Count III of Plaintiffs' Complaint asserts that WMB violated M.C.L. § 565.41 by requiring them to reimburse it for the fee that it paid to record the mortgage discharge in the Register of Deeds office.  Complaint, ¶¶ 40-43.  But the statute does *not* prohibit mortgagees from passing on recording fees to mortgagors, and it provides an express, limited remedy for statutory violations in any event.

M.C.L. § 565.41 states, in relevant part:

> Within the applicable time period in section 44(2), after a mortgage has been paid or otherwise satisfied, the mortgagee or the personal representative, successor, or assign of the mortgagee shall prepare a discharge of the mortgage, file the discharge with the register of deeds for the county where the mortgaged property is located, and *pay the fee for recording the discharge.*  [Emphasis added.]

Plaintiffs seize on the provision's last seven words and ask the Court to declare that they not only oblige the mortgagee to pay the recording fee in the first instance (so as to facilitate prompt recordation), but that they *also* create (i) an affirmative obligation on mortgagees to refrain from seeking reimbursement of mortgage discharge recording fees, and (ii) a corresponding cause of action for violating that supposed obligation.  This approach cannot be reconciled with the text or purpose of the statute.

M.C.L. § 565.41 exists to ensure that mortgagees promptly and properly record mortgage discharges with the register of deeds.  The statute requires that the mortgagee pay the discharge recording fee to facilitate that process.  *See* M.C.L. § 600.2567 (requiring the payment of such a fee at the time the document is recorded, including a mortgage or mortgage discharge).  But beyond requiring the mortgagee to pay the fee as part of the process of recording the discharge,

11

M.C.L. § 565.41 says *nothing* about the mortgagee's ability to obtain reimbursement of that fee from the mortgagor – and it certainly does not *forbid* reimbursement, especially where, as here, a contract contemplates reimbursement. *See* Complaint, Ex. B ¶ 23 ("Lender may charge Borrower a fee for releasing this Security Instrument"). This understanding of M.C.L. § 565.41 comports with the purpose that Michigan courts have attributed to similar recording statutes: preserving the accuracy of Michigan's property records by ensuring that mortgagees promptly record discharges. *See*, *e.g.*, *Atwood v. Bearss*, 47 Mich. 72, 73, 10 N.W. 112, 112 (1881).

Further, M.C.L. § 565.41, which does not provide for a cause of action, must be read along with its companion provision, M.C.L. § 565.44. *See* 2004 Mich. Legis. Serv. P.A. 447 (amending both statutes to cross-reference each other). Under M.C.L. § 565.44, a mortgagor has an express cause of action for a mortgagee's "refuse[al] or neglect[] to discharge the mortgage as provided *in this chapter* or to execute and acknowledge a certificate of discharge or release of the mortgage." M.C.L. § 565.44 (emphasis added). Read together, M.C.L. §§ 565.41 and 565.44 form a comprehensive statutory scheme, in which Section 565.41 establishes the obligation to do everything necessary to record promptly (including paying the recording fee), while Section 565.44 clarifies the timing of those obligations and provides a cause of action for their violation. This reading of the statute precludes Plaintiffs' claim under the Recording Act for at least two reasons.

*First*, M.C.L. § 565.44 establishes the sole cause of action available for a mortgagee's failure to meet its obligations under M.C.L. § 565.41. In adopting this section, the Michigan Legislature decided to provide a remedy for a failure to record promptly – but not for any other act or omission. Because nothing suggests that the Legislature intended for borrowers to have a remedy to recoup recording fees, this Court should reject Plaintiffs' attempt to redraft the statute

12

to create a new cause of action, as at least one court has done in the context of a materially identical claim. *See Quinn v. Advanta Nat. Bank*, No. 2002-3822-CP, at 5-7 (Berrien Cty. Trial Ct., Feb. 9, 2004) ("No cause of action exists for passing through the recording fee to the mortgagor").

*Second*, M.C.L. § 565.44 expressly references the "tender of the mortgagee's reasonable charges." Because this reference to reasonable charges appears in a section that relates solely to the release or discharge of mortgages, it logically includes reasonable fees related to the cost of release or discharge. This interpretation conforms to other Michigan statutes that permit lenders to collect similar fees. *See, e.g.*, M.C.L. § 445.1673 (lenders can collect "reasonable and necessary charges," including "actual expenses incurred" by the lender with respect to loan origination).

Because Plaintiffs have not alleged that the $14.00 mortgage discharge recording fee represents anything other than an actual expense that WMB incurred, that should end the matter.[2] The Court should dismiss Plaintiffs' purported cause of action under M.C.L. § 565.41.

### 3. Plaintiffs' Transactions with WMB Fall outside the Scope of the MCPA.

As an initial matter, Plaintiffs' claim under the Michigan Consumer Protection Act ("MCPA") rests on the same alleged violations as Plaintiffs' other statutory claims. Because Plaintiffs have framed the claim as derivative, the Court should dismiss the MCPA claim for the same reasons that it should dismiss Plaintiffs' other claims.

---

[2] The statutory fee for recording any single page instrument in Michigan is $14.00. *See* M.C.L. § 600.2567(1)(a) ($8.00); M.C.L. § 600.2567(2) ($2.00); M.C.L. § 600.2567a(1) & (2) ($4.00); *see also*, http://www.emmet.mi.us/deeds/servicesrod.htm (Emmet County register of deeds website, reflecting a $14.00 recording fee for one page documents).

13

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY· CAPITOL VIEW 201 TOWNSEND STREET SUITE 900 LANSING, MICHIGAN 48933

More fundamentally, the MCPA by its terms does not apply to the transactions at issue here.  The MCPA does not apply to a "transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States."  M.C.L. § 445.904(1)(a).  In *Smith v. Globe Life Ins. Co.*, 460 Mich. 446, 465, 597 N.W.2d 28, 38 (1999), the Michigan Supreme Court explained that, under this exception, the relevant inquiry is "whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited."  *See also, Liss v. Lewiston-Richards, Inc.*, 478 Mich. 203, 732 N.W.2d 514 (June 6, 2007).

As a federal savings association, WMB has the specific statutory authority to "invest in, sell, or otherwise deal in…[r]esidential real property loans."  12 U.S.C. § 1464(c)(1)(B).  As discussed at length in Section A, above, when engaging in such transactions, WMB is subject to comprehensive federal regulation.  As the Michigan Court of Appeals concluded after reviewing this regulatory framework, "[i]t is abundantly clear…that federal savings banks making residential mortgage loans are engaged in transactions specifically authorized under laws administered by a regulatory board or officers acting under United States statutes."  *Newton v. Bank West*, 262 Mich. App. 434, 440, 686 N.W.2d 491, 494 (2004).  *See also Hanning v. Homecomings Fin. Networks*, 436 F. Supp. 2d 865 (W.D. Mich. 2006); *Mills v. Equicredit Corp.*, 294 F. Supp. 2d 903 (E.D. Mich. 2003).  Thus, WMB's lending activity falls outside the MCPA.[3]

---

[3] In the face of this recent and consistent authority, Plaintiffs may point to *Attorney General v. Diamond Mortgage Co.*, 414 Mich. 603, 327 N.W.2d 805 (1982), to argue that WMB is not exempt from the MCPA because the payoff statement fees and recording fees are not "specifically authorized."  But *Diamond Mortgage* involved a real estate broker who argued that its real estate license exempted it from the MCPA because the licensing statute contemplated that licensees would negotiate real estate mortgages.  414 Mich. at 616, 327 N.W.2d at 811.  The Supreme Court held that the defendant was ***not*** exempt from the MCPA because mortgage writing was not "specifically authorized" under the defendant's real estate license. 414 Mich. at 617, 327 N.W.2d at 811.  By contrast, federal law specifically authorizes WMB to engage in mortgage transactions. *See Hanning*, 436 F. Supp. 2d at 869.

14

**C.      The Complaint Itself Negates Plaintiffs' Breach of Contract Claim.**

In Count I, Plaintiffs claim that WMB breached their Note by charging a payoff statement fee and a mortgage discharge recording fee.  But Plaintiffs' claim concerning the payoff statement fee rests on a facially erroneous characterization of the documents they attach to their Complaint, and the parties' contracts expressly permit WMB to charge the recording fee.

**1.      The Contracts Do Not Forbid the Payoff Statement Fee.**

Plaintiffs assert that the payoff statement fee amounts to a contractually-prohibited prepayment charge.  In fact, however, both well-established law and the terms of the payoff statement establish that the payoff statement did not violate Plaintiffs' contracts.

Courts throughout the country repeatedly have held that payoff statement fees do not violate contract clauses that forbid prepayment charges.  In *Cappellini v. Mellon Mortgage Co.*, 991 F. Supp. 31, 39-40 (D. Mass. 1998), for example, the plaintiffs alleged that a $15 "fax fee" and a $25 "duplicate statement fee" violated their Note, which prohibited prepayment penalties. *Id.* at 34-35.  The court rejected the claim, noting that the challenged fees were not prepayment charges because: (i) the fees "may be incurred in situations unrelated to prepayment, such as updating personal records, preparing financial statements or evaluating refinancing possibilities"; (ii) "[a] borrower may also prepay a loan without obtaining a payoff statement"; and (iii) "these charges could readily be incurred even if the loan was paid at maturity." *Id.* at 38.  Numerous other courts have reached the same conclusion. *See, e.g., Curran v. Washington Mut. Bank, FA*, 2006 WL 516846 (W.D. Ark. Mar. 2, 2006); *Krause v. GE Capital Mortgage Serv., Inc.*, 731 N.E.2d 302 (Ill. App. Ct. 2000); *Stone v. Mellon Mortgage Co.*, 771 So.2d 451, 455-56 (Ala. 2000); *Colangelo v. Norwest Mortgage, Inc.*, 598 N.W.2d 14, 17-18 (Minn. Ct. App. 1999).

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY· CAPITOL VIEW 201 TOWNSEND STREET SUITE 900·LANSING, MICHIGAN 48933

15

Here, Plaintiffs have not alleged facts that, if proved, would establish that WMB charged Plaintiffs a forbidden prepayment charge. Indeed, the payoff statement attached to the Complaint makes clear that this case falls within the paradigm established by the abundant case law concerning payoff statement fees, cited above. Paragraph B of the "AMOUNTS DUE" section of that statement lists the $30.00 fee and notes that the "Payoff Statement Fee is due *from the requesting person or entity*." Complaint, Ex. C, at 1 (emphasis added). In other words, WMB charges the fee to whomever requests the preparation of the statement – whether an escrow agent, a real estate broker, a lawyer, or a subsequent lender – and not necessarily the borrower. That fact, standing alone, negates the notion that the statement fee amounts to a penalty imposed on the borrower for the privilege of paying off the loan.

Because the Complaint does not allege facts that, if proved, would establish that the statement fee amounted to an improper prepayment fee, the Court should dismiss Plaintiffs' breach of contract claim predicated on the payoff statement fee.

## 2.    Plaintiffs' Contract Allows the Recording Fee.

The plain terms of Plaintiffs' Mortgage permit WMB to charge the mortgage discharge recording fee to Plaintiffs:

> **23.   Release.** Upon payment of all sums secured by this Security Instrument, Lender shall prepare and file a discharge of this Security Instrument. *Lender may charge Borrower a fee for releasing this Security Instrument*, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

Complaint, Ex. B ¶ 23 (emphasis added).

Plaintiffs' breach of contract claim relating to the mortgage discharge recording fee rests solely on their allegation that WMB violated M.C.L. § 565.41, that the fee therefore was not "permitted by applicable law," and that it thus breached the contract. Complaint, ¶¶ 29-31. As discussed above, however, M.C.L. § 565.41 does not forbid WMB from obtaining

16

reimbursement for the recording fee, nor does it provide a cause of action against WMB.

Accordingly, Plaintiffs' breach of contract claim predicated on the mortgage discharge recording

fee should be dismissed.

> **D.      Because Plaintiffs Do Not Allege Anything More Than a Mere Overcharge, They Have Not Stated a Claim under RESPA.**

Plaintiffs assert that WMB's assessment of statement fees violates section 8(b) of

RESPA, 12 U.S.C. § 2607(b).  Complaint, ¶¶ 45-52.  That statute provides as follows:

> (b) *Splitting charges*
>
> No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C. § 2607(b).  Plaintiffs claim that WMB's payoff statement fees violate Section 8(b)

because they "were charged for no, nominal, or duplicative work, and/or were fees that exceed

the reasonable value of goods or services." Complaint ¶ 50.  In other words, Plaintiffs claim that

WMB overcharged them for the work that WMB performed to provide payoff statements.  But

this claim fails as a matter of law because, *as every federal Court of Appeal to address the issue*

*has held*, "Section 8 does not provide a cause of action for overcharges." *Santiago v. GMAC*

*Mortgage Group, Inc.*, 417 F.3d 384, 387 (3d Cir. 2005).

As with any other statutory claim, "[t]he threshold question is whether the statute clearly

and unambiguously allows [Plaintiffs'] claims." *Santiago*, 417 F.3d at 386.  "If the intent of

Congress is clear, that is the end of the matter; for the court, as well as the agency, must give

effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Natural Res.*

*Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984).

Even assuming that a statement fee qualifies as a "settlement fee" regulated under

RESPA (it does not), the plain text of Section 8(b), entitled "Splitting charges," is clear and

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY· CAPITOL VIEW 201 TOWNSEND STREET SUITE 900·LANSING, MICHIGAN 48933

17

unambiguous: it prohibits a person *only* from giving or receiving "any portion, split, or percentage" of fees charged in connection with the settlement of certain mortgage-related transactions "other than for services actually performed." 12 U.S.C. § 2607(b). As the Eighth Circuit has noted, this section is an "anti-kickback provision that unambiguously requires at least two parties to share a settlement fee in order to violate the statute." *Haug v. Bank of Am., N.A.*, 317 F.3d 832, 836 (8th Cir. 2003). Section 8(b) does *not* refer to or forbid "overcharging," instead leaving the amount of any fee to market forces.

In light of the statute's clear meaning, every Court of Appeals to address the issue has held that Section 8(b) does not afford a cause of action for alleged overcharges. *See Santiago*, 417 F.3d at 387; *Kruse v. Wells Fargo Home Mortgage, Inc.*, 383 F.3d 49, 56 (2d. Cir. 2004); *Haug*, 317 F.3d at 836; *Boulware v. Crossland Mortgage Corp.*, 291 F.3d 261, 265 n.3 (4th Cir. 2002); *Krzalic v. Republic Title Co.*, 314 F.3d 875, 877-82 (7th Cir. 2002). Plaintiffs' overcharge claim should be rejected.[4]

Despite this compelling trend in the authorities, Plaintiffs' Complaint refers to a policy statement issued by the U.S. Department of Housing and Urban Development ("HUD"), which suggests that overcharging, without more, "constitutes an independent RESPA violation [of Section 8(b)]." Complaint ¶¶ 48-51 & Ex. F. But the courts have rejected HUD's reading, for two sound reasons:

*First*, because the plain text of Section 8(b) does not provide a cause of action for overcharging, the agency cannot create a cause of action. As the Fourth Circuit has explained,

---

[4] The legislative history of Section 8(b) further supports the conclusion that RESPA does not provide a cause of action for allegedly excessive fees. As several Courts of Appeal have noted, before RESPA's passage, Congress considered and rejected a different bill that contained price controls for settlement services fees. *See Kruse*, 383 F.3d at 56-57; *Haug*, 317 F.3d at 837-38 (citing *Mercado v. Calumet Fed. Sav. & Loan Ass'n*, 763 F.2d 269, 271 (7th Cir. 1985)).

18

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY· CAPITOL VIEW 201 TOWNSEND STREET SUITE 900·LANSING, MICHIGAN 48933

"[d]eference might well be due Regulation X or HUD's statement of policy if § 8(b) were ambiguous.…But the text of the statute controls in this case." *Boulware*, 291 F.3d at 267. *See also Chevron*, 467 U.S. at 842-43 (explaining limits to deference).

*Second*, HUD's policy statement rests on a misreading of Section 8(b). To find a cause of action for overcharging in Section 8(b), Plaintiffs must argue that

> an overcharge occurs when the settlement service provider charges the consumer a fee, of which only one portion is a fee for the reasonable value of "services rendered." The other portion of the fee, the amount in excess of the reasonable value, is essentially a fee for "no services rendered" that is added to the fee for "services rendered."

*Santiago*, 417 F.3d at 387. The Third Circuit recognized that "[t]his parsing of the statute is one that is intelligible only if the parts of Section 8(b) are read separately; if the section is read as a whole, such a meaning becomes absurd." *Id.* Based on similar reasoning, several other federal appellate courts have expressly rejected the HUD policy statement's rationale for "overcharging" liability. *See Kruse*, 383 F.3d at 55-56; *Krzalic*, 314 F.3d at 879.

For these reasons, the Court should dismiss Plaintiffs' RESPA overcharge claim.[5]

## E.  The Voluntary Payment Doctrine Bars Plaintiffs' Claims.

Even if Plaintiffs were able to resolve the many infirmities with their Complaint, the voluntary payment doctrine bars their claims in their entirety. Each of Plaintiffs' claims seeks identical relief:  reimbursement of payoff statement and mortgage discharge recording fees. Under settled law, however, a party who has voluntarily paid money with full knowledge of the

---

[5] The dismissal of the RESPA claim should not deprive this Court of subject matter jurisdiction. Among other things, the Complaint alleges jurisdiction not only pursuant to RESPA, 12 U.S.C. § 2614, but also pursuant to the diversity statute, 28 U.S.C. §1332. *See* Complaint, ¶ 3. Because the total amount in controversy between Plaintiffs and WMB amounts to only $44.00, Plaintiffs must be invoking class action diversity jurisdiction pursuant to the jurisdictional provisions of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2), which confers federal jurisdiction over class actions where diversity exists between the defendant and some class members, and the Complaint places more than $5 million in controversy. Based on a review of Michigan lending data, WMB agrees with Plaintiffs that their Complaint satisfies the jurisdictional criteria.

19

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY· CAPITOL VIEW 201 TOWNSEND STREET SUITE 900·LANSING, MICHIGAN 48933

facts cannot recover that money. *See Mills v. Equicredit Corp.*, 344 F. Supp. 2d 1071, 1077-78 (E.D. Mich. 2004) (citing *Progressive Michigan Ins. Co. v. United Wisconsin Life Ins. Co.*, 84 F. Supp. 2d 848, 854 (E.D. Mich. 2000)).

Here, Plaintiffs admit that they "paid the payoff statement and mortgage discharge recording fees," Complaint, ¶ 10, *after* they received a payoff statement that *clearly* itemized these two fees. Complaint, Ex. C, at 1. Plaintiffs do not allege that they made these payments under protest or reservation of rights. *See Mills*, 344 F. Supp. 2d at 1077. Absent that allegation, Plaintiffs' voluntary payment of the statement fee and mortgage discharge recording fee precludes their attempt to recover those fees. *See Stone v. Mellon Mortgage*, 771 So. 2d at 456; *Westfall v. Chase Lincoln First Bank, N.A.,* 685 N.Y.S.2d 181 (App. Div. 1999).

## CONCLUSION AND RELIEF REQUESTED

For the foregoing reasons, WMB respectfully asks this Court to grant its motion to dismiss Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6).

DYKEMA GOSSETT PLLC

By:s/Theodore Seitz
Theodore Seitz (P60320)
Lori McAllister (P39501)
T.L. Summerville (P63445)
Attorneys for Defendants
Capitol View
201 Townsend Street, Suite 900
Lansing, MI 48933
(517) 374-9149
tseitz@dykema.com

Dated: July 10, 2007

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY· CAPITOL VIEW 201 TOWNSEND STREET SUITE 900·LANSING, MICHIGAN 48933

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 10, 2007, I electronically filed the foregoing paper with the

Clerk of the Court using the ECF system which will send notification of such filing to the

following:

Paul A. Zebrowski (P44427)
Thomas A. Biscup (P40380)
Attorneys for Plaintiffs
Law Offices of Paul Zebrowski & Associates
45581 Village Boulevard
Shelby Twp., MI  48315
(586) 566-7266

s/Theodore Seitz
DYKEMA GOSSETT PLLC
Theodore Seitz (P60320)
Lori McAllister (P39501)
T.L. Summerville (P63445)
Attorneys for Defendants
Capitol View
201 Townsend Street, Suite 900
Lansing, MI 48933
(517) 374-9149
tseitz@dykema.com

LAN01\174596.1
ID\TWS

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY· CAPITOL VIEW 201 TOWNSEND STREET SUITE 900·LANSING, MICHIGAN 48933

21