UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD J. MOLOSKY, et al.,

    Plaintiffs,

vs.

WASHINGTON MUTUAL BANK,

    Defendant.
_____/

Civil Action No.
07-CV-11247

HON. BERNARD A. FRIEDMAN

## **OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

This matter is presently before the court on defendant's motion to dismiss the complaint[1] pursuant to Fed. R. Civ. P. 12(b)(6) [docket entries 14 and 31]. Plaintiffs have filed a response brief and defendant has filed a reply. Pursuant to E.D. Mich. LR 7.1(e)(2), the court shall decide this motion without oral argument.

Plaintiffs allege that in September 2006 they paid off a home loan before the maturity date. In addition to unpaid principal and accrued interest, plaintiffs were charged a $30 "payoff statement fee" and a $14 "recording fee." Plaintiffs allege that by assessing these fees defendant breached the parties' contract (Count I); violated Michigan's Usury Act, M.C.L. § 438.31 (Count II); violated a Michigan statute governing the recording of deeds, M.C.L. § 565.41 (Count III); violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.* (Count IV); and violated the Michigan Consumer Protection Act ("MCPA"), M.C.L. § 445.901 (Count V). For relief plaintiffs seek class certification, damages, costs, interest and attorney fees.

A motion to dismiss for failure to state a claim tests the legal sufficiency of the

---

[1]The version of the complaint at issue is the Second Amended Class Action Complaint and Jury Demand (hereinafter, "complaint"), filed on November 2, 2007.

allegations:

> "[A] Rule 12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004) (quotation omitted). In reviewing a motion to dismiss, we construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff. *See Evans-Marshall v. Bd. of Educ.*, 428 F.3d 223, 228 (6th Cir. 2005). The defendant has the burden of showing that the plaintiff has failed to state a claim for relief. *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir.1991). While all the factual allegations of the complaint are accepted as true, "we need not accept as true legal conclusions or unwarranted factual inferences." *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000) (citation omitted).

*Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Applying these standards to the present case, the court is convinced the complaint fails to state a claim and must therefore be dismissed.

Plaintiffs' state-law claims (Counts I, II, III and V) must be dismissed because they are preempted by the Home Owners' Loan Act ("HOLA"), 12 U.S.C. § 1461 *et seq.*, and regulations issued pursuant thereto. As the Supreme Court explained in *Fidelity Fed. Sav. and Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 145 (1982), Congress, in passing HOLA in 1932, created the Home Loan Bank Board and authorized it "to provide for the organization, incorporation, examination, operation, and regulation of associations to be known as 'Federal Savings and Loan Associations'" (*quoting* 12 U.S.C. § 1464(a)). The Court found that Congress clearly "gave the Board plenary authority to issue regulations governing federal savings and loans" and, in fact, that the quoted statutory language "expresses no limits on the Board's authority to regulate the lending practices of federal savings and loans." *Id.* at 160-61. Further, "Congress plainly envisioned that federal savings and loans would be governed by what the Board – not any particular State – deemed to be the 'best practices' [of such institutions]. . . . Thus, the statutory language suggests that Congress

allegations:

> "[A] Rule 12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004) (quotation omitted). In reviewing a motion to dismiss, we construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff. *See Evans-Marshall v. Bd. of Educ.*, 428 F.3d 223, 228 (6th Cir. 2005). The defendant has the burden of showing that the plaintiff has failed to state a claim for relief. *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir.1991). While all the factual allegations of the complaint are accepted as true, "we need not accept as true legal conclusions or unwarranted factual inferences." *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000) (citation omitted).

*Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Applying these standards to the present case, the court is convinced the complaint fails to state a claim and must therefore be dismissed.

Plaintiffs' state-law claims (Counts I, II, III and V) must be dismissed because they are preempted by the Home Owners' Loan Act ("HOLA"), 12 U.S.C. § 1461 *et seq.*, and regulations issued pursuant thereto. As the Supreme Court explained in *Fidelity Fed. Sav. and Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 145 (1982), Congress, in passing HOLA in 1932, created the Home Loan Bank Board and authorized it "to provide for the organization, incorporation, examination, operation, and regulation of associations to be known as 'Federal Savings and Loan Associations'" (*quoting* 12 U.S.C. § 1464(a)). The Court found that Congress clearly "gave the Board plenary authority to issue regulations governing federal savings and loans" and, in fact, that the quoted statutory language "expresses no limits on the Board's authority to regulate the lending practices of federal savings and loans." *Id.* at 160-61. Further, "Congress plainly envisioned that federal savings and loans would be governed by what the Board – not any particular State – deemed to be the 'best practices' [of such institutions]. . . . Thus, the statutory language suggests that Congress

expressly contemplated, and approved, the Board's promulgation of regulations superseding state law." *Id.* at 161-62.[2]

> In discussing the preemption doctrine, the Court stated:
>
> Pre-emption may be either express or implied, and "is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." Absent explicit pre-emptive language, Congress' intent to supersede state law altogether may be inferred because "[t]he scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," because "the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject," or because "the object sought to be obtained by federal law and the character of obligations imposed by it may reveal the same purpose."
>
> * * *
>
> Federal regulations have no less pre-emptive effect that federal statutes. Where Congress has directed an administrator to exercise his discretion, his judgments are subject to judicial review only to determine whether he has exceeded his statutory authority or acted arbitrarily.

*Id.* at 152-54.

The OTS, which was created in 1989 and assumed the powers of the Federal Home Loan Bank Board, has completely occupied the field of regulating federal savings associations. These regulations state, in part, as follows:

> (a) Occupation of field. Pursuant to sections 4(a) and 5(a) of the

---

[2]This authority was later transferred to the Office of Thrift Supervision ("OTS"), which was created by Congress as part of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"). *See* 12 U.S.C. § 1462a; *Smallwood v. Office of Thrift Supervision*, 925 F.2d 894 (6th Cir. 1991).

HOLA, 12 U.S.C. 1463(a), 1464(a), OTS is authorized to promulgate regulations that preempt state laws affecting the operations of federal savings associations when deemed appropriate to facilitate the safe and sound operation of federal savings associations, to enable federal savings associations to conduct their operations in accordance with the best practices of thrift institutions in the United States, or to further other purposes of the HOLA. To enhance safety and soundness and to enable federal savings associations to conduct their operations in accordance with best practices (by efficiently delivering low-cost credit to the public free from undue regulatory duplication and burden), OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section or § 560.110 of this part. For purposes of this section, "state law" includes any state statute, regulation, ruling, order or judicial decision.

(b) Illustrative examples. Except as provided in § 560.110 of this part, the types of state laws preempted by paragraph (a) of this section include, without limitation, state laws purporting to impose requirements regarding:

> (1) Licensing, registration, filings, or reports by creditors;
>
> (2) The ability of a creditor to require or obtain private mortgage insurance, insurance for other collateral, or other credit enhancements;
>
> (3) Loan-to-value ratios;
>
> (4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;
>
> (5) Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees,

and overlimit fees;

(6) Escrow accounts, impound accounts, and similar accounts;

(7) Security property, including leaseholds;

(8) Access to and use of credit reports;

(9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants;

(10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages;

(11) Disbursements and repayments;

(12) Usury and interest rate ceilings to the extent provided in 12 U.S.C. 1735f-7a and part 590 of this chapter and 12 U.S.C. 1463(g) and § 560.110 of this part; and

(13) Due-on-sale clauses to the extent provided in 12 U.S.C. 1701j-3 and part 591 of this chapter.

(c) State laws that are not preempted. State laws of the following types are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section:

(1) Contract and commercial law;

(2) Real property law;

(3) Homestead laws specified in 12 U.S.C. 1462a(f);

(4) Tort law;

(5) Criminal law; and

    (6) Any other law that OTS, upon review, finds:

    (I) Furthers a vital state interest; and

    (ii) Either has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed in paragraph (a) of this section.

  Several courts have recognized that these regulations preempt any and all state laws, including state judicial decisions, to the extent they conflict with OTS regulations, purport to regulate federal savings associations, or have more than an incidental effect on their lending operations. *See, e.g., Flagg v. Yonkers Sav. and Loan Ass'n, FA*, 396 F.3d 178 (2nd Cir. 2005) (affirming the dismissal of plaintiffs' claim that defendant violated a state statute requiring lenders to pay interest on escrow accounts; court noted that the OTS comprehensively regulates federal savings associations and that conflicting state statutes are preempted); *Prince-Servance v. BankUnited, FSB*, 2007 WL 3254432 (N.D. Ill. Nov. 1, 2007) (dismissing as preempted plaintiff's claims that defendant violated a state consumer fraud statute by failing to disclose hidden fees and other mortgage terms); *Silvas v. E*Trade Mortgage Corp.*, 421 F. Supp.2d 1315 (S.D. Cal. 2006) (dismissing as preempted plaintiffs' claims that defendant violated a state unfair competition law by refusing to refund application "lock-in" fees and by misrepresenting applicants' recision rights; citing § 560.2, the court noted that "any state law that purports to regulate a federal savings and loans' lending activities, and more specifically its loan related fees or disclosure and advertising practices, is expressly preempted"); *Boursiquot v. Citibank F.S.B*, 323 F. Supp.2d 350 (D. Conn. 2004) (finding that the OTS has occupied the entire field of federal savings association regulation, and therefore plaintiffs' claims that defendant violated a state unfair trade practices statute by charging a fax fee and one-half month of PMI and by failing to refund promptly excess funds upon

plaintiffs' paying off a mortgage loan, were preempted); *Haehl v. Washington Mut. Bank, F.A.*, 277 F. Supp.2d 933, 940 (S.D. Ind. 2003) (noting that the OTS regulations preempt "any state statute or judicial decision purporting to regulate loan-related fees or the processing and servicing of mortgages, or any state statute or judicial decision that has more than an incidental effect on the lending operations of federal savings associations; therefore, plaintiffs' claims that defendant violated a state statute regulating closing costs, and state common law by charging "reconveyance fees," were preempted).

The same result must be reached in the present case. All of plaintiffs' state-law claims (Counts I, II, III and V) are expressly preempted by 12 C.F.R. § 560.2(b)(5) and (b)(12). These claims are based on the allegation that defendant collected improper "loan-related fees" or prepayment charges. State law simply may not regulate such matters. Defendant's motion to dismiss these counts, based on preemption, is therefore granted.

Count IV of the complaint asserts a claim under RESPA based on the following allegations:

> 46. Among other things, RESPA prohibits the splitting of fees made or received for the rendering of settlement services other than for services actually performed. Section 8(b) of RESPA, 12 U.S.C. § 2607(b).
>
> 47. Specifically, that section provides:
>
>> No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.
>
> 12. U.S.C. § 2607(b).
>
> 48. Pursuant to Section 8(b) of RESPA, the U.S. Department of

Housing and Urban Development ("HUD") has recognized that a settlement service provider may not mark up a third-party fee unless the provider performs a service for that fee and the mark up is commensurate with the value of the service performed.

49. HUD issued a Statement of Policy to clarify its interpretation of Section 8(b), which reiterated HUD's long-standing position that RESPA prohibits the charging of unearned fees. Exhibit F.

50. According to HUD, each of the following circumstances constitutes an independent RESPA violation:

> a. Two or more persons split a fee for settlement services and part or all of one provider's share of the fee is not in return for goods or facilities actually furnished or services actually performed;
>
> b. One settlement service provider marks up the cost of goods or services provided by a third party and keeps the difference without providing actual goods or services to justify the additional charge; and
>
> c. One settlement provider charges a fee for no, nominal, or duplicative work, or a fee that exceeds the reasonable value of goods or services provided.

51. The assessments of payoff statement fees in the payoff statements described above were charged for no, nominal, or duplicative work, and/or were fees that exceed the reasonable value of goods or services provided.

52. Defendant charged this payoff statement fee in connection with the rendering of real estate settlement services, as defined in RESPA and its implementing regulations.

53. The assessment of payoff statement fees constitutes violations of RESPA.

54. Plaintiffs have suffered damages as the result.

Defendant argues that plaintiffs have failed to state a claim under RESPA because they allege only that the payoff statement fee exceeded the reasonable value of the work, if any, that

8

was performed in connection with its preparation. Defendant contends that RESPA does not prohibit "unearned fees" or "overcharges" as such but only the *splitting* of such charges, as the purpose of the statute is to prohibit kickback schemes, and plaintiffs do not allege any such splitting. Plaintiffs, relying heavily on a HUD regulation, argue that RESPA prohibits a settlement service provider from charging any unearned fees, regardless of whether they are split with a third party.

The court has reviewed the statute, the HUD regulation in question, and the case authority, and is persuaded that plaintiffs have failed to state a claim under RESPA for two reasons. First, the fees at issue were not "received for the rendering of a real estate settlement service," as required by 12 U.S.C. § 2607(b). RESPA defines "settlement services" as "includ[ing] any service provided in connection with a real estate settlement . . ." 12 U.S.C. § 2602(3). There is persuasive case authority supporting the proposition that "settlement" means "'the final transaction between the buyer and seller, whereby the conveyancing documents are concluded and the money and property transferred,'" and that RESPA therefore has no application to "the satisfaction, prepayment, or release of a mortgage." *McAnaney v. Astoria Fin. Corp.*, 357 F. Supp.2d 578, 590 (E.D.N.Y. 2005), *quoting* Black's Law Dictionary (8th ed. 2004). *See also Bloom v. Martin*, 77 F.3d 318 (9th Cir. 1996) (affirming dismissal of plaintiffs' claim that defendants violated RESPA by assessing demand and reconveyance fees upon plaintiffs' prepayment of their mortgage loans; court found that RESPA applies to costs assessed at the settlement, i.e., the closing at which the property was purchased, not those which are assessed at any point in time thereafter); *Greenwald v. First Fed. Sav. & Loan Ass'n*, 446 F. Supp. 620, 625 (D.Mass.1978) (finding that RESPA did not apply to interest payments on escrow accounts because such payments are not part of the "settlement" in that

9

they "can continue long after the closing of the mortgage transaction"). The Department of Housing and Urban Development, the agency charged with administering RESPA, itself defines "settlement" as "the process of executing legally binding documents regarding a lien on property that is subject to a federally related mortgage loan. This process may also be called 'closing' or 'escrow' in different jurisdictions." 24 C.F.R. § 3500.2(b).

Clearly, the allegations in the present case fail to state a claim under RESPA because the fees at issue were not assessed at or prior to the *settlement*. The fees were not assessed when plaintiffs closed their purchase of the property (and when they executed the loan documents giving defendant a lien thereon), but years later when they paid off the remaining balance of the mortgage loan. RESPA simply does not apply to fees assessed after settlement.

Even if RESPA were expanded to apply to fees assessed in connection with the payoff of a mortgage loan, plaintiffs' allegations in the present case would still fail to state a claim. The statute plaintiffs claim defendant violated states:

> **§ 2607. Prohibition against kickbacks and unearned fees**
>
> * * *
>
> **(b) Splitting charges**
>
> No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

Plaintiffs allege that "Defendant charged Plaintiffs a $30 fee in order to obtain the payoff statement

for the Note."³ Complaint ¶ 9. Plaintiffs do not allege that defendant gave or accepted "any portion, split, or percentage" of this fee, that is, plaintiffs do not allege that defendant split the charge with a third party. Rather, plaintiffs complain that the $30 payoff statement fee "is greatly disproportionate to the actual administrative costs endured [sic] by Defendant" and that the fee was "charged for no, nominal, or duplicative work, and/or were fees that exceed the reasonable value of goods or services provided." *Id.* ¶¶ 15, 51.

The overwhelming weight of the case law holds that overcharges, such as are alleged in this case, are not covered by § 2607(b). As the subtitle indicates, this subsection of RESPA prohibits unlawful "splitting" of charges, not overcharges. *See Santiago v. GMAC Mortgage Group, Inc.*, 417 F.3d 384, 387-88 (3rd Cir. 2005) (affirming the dismissal of plaintiff's claim that defendant violated RESPA by collecting excessive tax service, flood certification, and funding fees at settlement; the court held that "the plain language of [§ 2607(b)] does not provide for a cause of action for overcharges" and rejected a contrary HUD regulation as inconsistent with the statute); *Kruse v. Wells Fargo Home Mortgage, Inc.*, 383 F.3d 49, 57 (2nd Cir. 2004) (affirming dismissal of plaintiffs' claim that defendants violated RESPA by overcharging for tax service, flood certification, document preparation, and underwriting in connection with home mortgage loans; the court indicated that § 2607(b) "did not impose price controls and therefore does not prohibit 'overcharges'"); *Haug v. Bank of America, N.A.*, 317 F.3d 832, 836 (8th Cir. 2003) (dismissing plaintiffs' claim that defendant violated RESPA by charging $50 for a credit report, $300 for an appraisal, and $25 for document delivery services in connection with a mortgage loan; the court held

---

³Plaintiffs also allege that defendant "required Plaintiffs to pay a $14 mortgage discharge recording fee." Complaint ¶ 10. However, plaintiffs' RESPA claim is based solely on the payoff statement fee. *See id.* ¶¶ 51-53.

11

that § 2607(b) "is an anti-kickback provision that unambiguously requires at least two parties to share a settlement fee in order to violate the statute. . . . [T]he plain language of [§ 2607(b)] requires plaintiffs to plead facts showing that the defendant illegally shared fees with a third party"); *Boulware v. Crossland Mortgage Corp.*, 291 F.3d 261, 265 (4th Cir. 2002) (same); *Echevarria v. Chicago Title & Trust Co.*, 256 F.3d 623, 626 (7th Cir. 2001) (same).

The court adopts the analysis of these cases and, like them, concludes that RESPA does not recognize a cause of action for overcharges or "unearned fees" in the absence of an allegation that the lender split the fees in question with a third party. As plaintiffs in the present case allege only that defendant overcharged them for the settlement payoff statement, not that defendant split the fee with a third party, they have failed to state a claim cognizable under RESPA.

For the reasons stated above,

IT IS ORDERED that defendant's motion to dismiss is granted.


s/Bernard A. Friedman
Bernard A. Friedman
United States District Judge

Dated: January 18, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 18, 2008, by electronic and/or ordinary mail.

s/Carol Mullins
Case Manager